IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANNEMARIE BROWN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-649-JJF |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security, | : |
| Defendant. | : |

Gary L. Smith, Esquire of GARY L. SMITH, ESQUIRE, Newark, Delaware.
Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Michael McGaughran, Esquire, Regional Chief Counsel, of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

**MEMORANDUM OPINION**

December 19, 2008
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Annemarie Brown, seeking review of the final administrative decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 17) requesting the Court to remand this matter to the A.L.J. for further findings and proceedings. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 25) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted to the extent that it requests a remand. The decision of the Commissioner dated March 16, 2005, will be reversed and this matter will be remanded to the A.L.J. for further findings and/or proceedings consistent with this decision.

## BACKGROUND

I.  **Procedural Background**

Plaintiff filed an application for DIB on May 28, 2003, alleging disability since August 31, 2001, due to fibromyalgia, severe headaches, lower back and neck pain, severe left arm pain,

1

partial loss of use of the left arm and memory loss. (Tr. 44). Plaintiff's application was denied initially and upon reconsideration. (Tr. 28. 33). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 39) On March 16, 2005, the A.L.J. issued a decision denying Plaintiff's application for DIB. (Tr. 8-21). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 7). On September 14, 2006, the Appeals Council denied Plaintiff's request for review (Tr. 4-6), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 8) and the Transcript (D.I. 13) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief (D.I. 18) in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief (D.I. 26) in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has not filed a Reply Brief. Accordingly, the Court will proceed to address the

parties' Motions on the papers filed to date.

**II.   Factual Background**

   A.   Plaintiff's Medical History, Condition and Treatment

   At the time of the A.L.J.'s decision, Plaintiff was forty-seven years old. (Tr. 25). Plaintiff has an eleventh grade education and a certificate from Delaware Technical Community College. (Tr. 278). Her past work experience includes work as a property manager and dispatcher. (Tr. 279-280). Plaintiff alleges disability since August 31, 2001, and was insured for disability through March 31, 2006. (Tr. 108, 122). Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

      1.   Physical Impairments

   In March 2003, Plaintiff consulted a neurologist, K. Alvin Lloyd, M.D. for complaints of headaches, memory loss and arm and joint pain. Dr. Lloyd opined that Plaintiff's headaches were due to hormonal changes resulting from menopause and that her upper extremities pain was due to reflex sympathetic dystrophy (complex regional pain syndrome). (Tr. 175-176). He recommended physical therapy. (Tr. 171). Follow-up studies of Plaintiffs' arms and back, including x-rays, MRIs and EMGs, showed normal nerve conduction, chronic left C6 radiculopathy, bilateral C4-5 and C5-6 neural foraminal stenosis, and discogenic and degenerative disease at L2-L3. (Tr. 120, 160, 166, 169). In July 2003, Dr.

3

Lloyd opined that Plaintiff was "totally unable to work at present." (Tr. 163).

Plaintiff was then referred to a neurosurgeon, Yakov U. Koyfman, M.D. for consultation. Dr. Koyfman diagnosed Plaintiff with degenerative cervical spine disease and recommended physical therapy. (Tr. 117-119).

By September 2003, Dr. Lloyd noted that Plaintiff had not begun physical therapy, and he recommended a follow-up with Dr. Koyfman. (Tr. 160-161). By November 2003, Plaintiff had not complied with either of Dr. Lloyd's recommendations. (Tr. 157). A medical examination of Plaintiff at that time showed that her headaches and neurological condition were stable. (Tr. 155, 158, 240, 245-246, 252-253, 254-255).

In July 2004, Plaintiff complained of left wrist pain and she consulted Philip S. Schwartz, M.D., a rheumatology consultant. A physical examination of Plaintiff revealed some tenderness over her left wrist, knees and left foot, but none of the areas were swollen or inflamed. Plaintiff had good range of motion in her wrist, and no peripheral synovitis. (Tr. 216, 228-229).

In September 2004, Plaintiff consulted with a second neurologist, Pawan Rastogi, M.D., for her low back pain. An MRI of Plaintiff's back at that time showed multilevel disc disease, with a small bulging disc at L4-5 and L5-S1. There was no

significant root compression. Plaintiff's back was tender with diminished range of motion, but her strength was 5/5. Dr. Rastogi opined that Plaintiff had mild degenerative disc disease with mechanical low back pain. He recommended physical therapy and epidural steroid injections, but did not recommend surgery. (Tr. 248-249, 270).

During this same month, Dr. Lloyd referred Plaintiff to a pain management specialist for neck and back pain. On her last office visit with Dr. Lloyd on December 23, 2004, Dr. Lloyd reported that Plaintiff's headaches were under control; however, Plaintiff had not yet seen the pain management specialist. (Tr. 253-255).

A state agency physician completed a Physical Residual Functional Capacity Assessment of Plaintiff on November 4, 2003. The state agency physician opined that Plaintiff had the residual functional capacity to perform light work. (Tr. 121-129).

2.   Mental Impairments

In November 2003, Plaintiff was referred by the Delaware Disability Determination Services to S.M. Iqbal, M.D. for a clinical psychological evaluation and memory testing. (Tr. 130-136). On examination, Plaintiff's thought content was clear and undistorted and she was oriented in all spheres. Her memory was intact, but her abstract thinking was poor. (Tr. 134). Dr. Iqbal reported that Plaintiff does limited activities and is

5

socially isolated.  Plaintiff was diagnosed with depressive disorder with anxious mood associated with varying concentration secondary to a history of herniated disc and constant pain.  (Tr. 136).

    Dr. Carlene Tucker-Okine, Ph.D., a state agency physician, completed a Mental Residual Functional Capacity Assessment for Plaintiff on December 3, 2003.  Dr. Tucker-Okine opined that Plaintiff was not significantly limited in most work-related areas; however, Plaintiff was moderately limited in her ability to maintain attention and concentration, perform activities within a schedule, and complete a normal workday or workweek.  Dr. Tucker-Okine noted that while Plaintiff alleged forgetfulness, her memory was in tact.  Based on these findings, Dr. Tucker-Okine opined that Plaintiff was able to handle low stress tasks.  Dr. Tucker-Okine also completed a Psychiatric Review Technique Form ("PRTF") opining that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration persistence or pace and no episodes of decompensation.  (Tr. 137-154).

    In July 2004, a second state agency physician J. Brandon, Ph.D. agreed with Dr. Tucker-Okine's assessment but added two more moderate limitations, one in Plaintiff's ability to understand and remember detailed instructions and one in her

ability to set realistic goals and make plans independently of others. Dr. Brandon also completed a PRTF which differed from Dr. Tucker-Okine's in that he found more areas in which Plaintiff was moderately restricted. Specifically, Dr. Brandon found that Plaintiff had moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and one or two episodes of decompensation. (Tr. 194-196, 198-211).

      B.    The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel and testified regarding her condition. (Tr. 274-311). Plaintiff testified that she drives, but that she limits herself because she gets confused when she is unfamiliar with the area and gets jittery and loses her concentration when she is in traffic. Plaintiff testified to severe headaches approximately three times a week when they are not under control and to constant neck pain, back pain and wrist pain and numbness. Plaintiff testified that she had physical therapy in the late 1990s, and takes medication for her headaches and back pain. She does not wear a brace and did not have any injections.

Plaintiff testified that she is depressed and has crying spells a few times a week. She further testified that she is irritable and angry often and that she has mood swings. Plaintiff testified that she only sleeps three or four hours a

7

night due to the pain.  Plaintiff also testified that her fingers, ankles and feet are swollen all the time.  Plaintiff further testified that her medications do not significantly help with her mood or her physical complaints and that they cause side effects like tiredness, dizziness and loss of her balance at least once a day.

Plaintiff testified that she cannot bend down to put on her shoes and socks by herself and cannot do her hair by herself, but she does brush her own teeth.  Plaintiff testified that her daughter-in-law moved in to help her with the housework, but that she does the cooking, if it is cooking in the oven or microwave, not the stove-top.  Plaintiff testified that she engages in no social activities and sits in her recliner chair for six or seven hours a day watching TV or trying to read a little to her granddaughter.  Plaintiff estimated that she can only walk for a minute and stand for three or four minutes.  She testified that she could sit for an hour or two and lift five pounds.

Plaintiff testified that she has started to have difficulty breathing and early symptoms of congestive heart failure.  She testified that she smokes a pack of cigarettes a day.

The A.L.J. asked the vocational expert to consider a hypothetical person with occasional posturals, limited pushing and pulling with the upper extremities, and limited reaching with the left upper extremity.  The A.L.J. further indicated that this

hypothetical person should avoid concentrated exposure to fumes, cold and vibration and should be limited to simple unskilled work because of the side-effects from medication. Based on this hypothetical, the vocational expert opined that this person could perform work as (1) a mail clerk, of which there are 1,500 jobs locally and 90,000 nationally, (2) an unarmed security guard, of which there are 3,000 jobs locally and over 200,000 nationally, (3) an order clerk, of which there are 1,000 jobs locally and 90,000 nationally, and (4) an assembler, of which there are 1,000 jobs locally and 85,000 nationally. The vocational expert also testified that these jobs would accommodate a shift in position from sitting to standing and could be performed with the use of only one hand. The vocational expert also testified that moderate limitations in the ability to maintain a regular schedule do not preclude unskilled work.

In her decision dated March 16, 2005, the A.L.J. found that Plaintiff suffered from cervical degenerative disc disease, left arm and shoulder pain, depression and obesity which are "severe" impairments, but do not meet or medically equal a listing. The A.L.J. also found that Plaintiff's allegations regarding her limitations were "not totally credible" in light of the findings and reports of her treating and examining physicians. (Tr. 20). The A.L.J. further found that Plaintiff had the residual functional capacity to perform a significant range of light work,

and therefore, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act. (Tr. 20-21).

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will

10

not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I.   Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240,

244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of

establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

II. **Whether The A.L.J.'s Decision Is Supported By Substantial Evidence**

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. (1) failed to properly evaluate Plaintiff's subjective complaints of pain, and (2) failed to evaluate conflicting medical evidence in the record concerning Plaintiff's mental restrictions.

The Court has reviewed the decision of the A.L.J. in light of the parties' arguments, the record and the legal standard of

13

review and concludes that a remand is necessary to address several troubling aspects of the decision. Perhaps most troubling to the Court is the A.L.J.'s statement that "no treating or examining source stated that the claimant's impairments were totally debilitating or rendered the claimant completely unemployable." (Tr. 17). This statement represents both an incorrect characterization of the record, and an error in the application of legal principles. With regard to the former, the Court notes that Dr. Lloyd did opine in July 2003, that Plaintiff was "unable to work at present." (Tr. 163). To the extent that the A.L.J. required further information regarding whether this opinion still applied to Plaintiff's condition, the A.L.J. should have contacted her treating physician to clarify and further develop the record. 20 C.F.R. § 404.1512(e)(1); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). With regard to the latter, the Court notes that the law precludes an A.L.J. from relying on a physician's silence regarding a plaintiff's physical abilities and work restrictions as evidence that the plaintiff has no restrictions. See e.g., Mason v. Shalala, 994 F.2d 1058, 1068 n.15 (3d Cir. 1993); Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985).

In addition, the Court has concerns regarding conflicts in the medical evidence in the record that the A.L.J. did not explore. For example, the A.L.J. accepted the opinions of

certain state agency physicians and psychologists, but did not accept or discuss the opinion of J. Brandon, Ph.D. Dr. Brandon's opinion conflicted with the opinion of Dr. Tucker-Okine in that it identified more areas of moderate limitation than Dr. Tucker-Okine. Rather than discuss this opinion and the reasons for rejecting it, the A.L.J. ignored it. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (internal quotations and citations omitted). In this case, the lack of discussion of Dr. Brandon's opinion takes on particular significance because the vocational expert testified that the greater the number of moderate assessments a plaintiff receives the more likely he or she would be precluded from performing all work.

In addition, the Court has concerns about Dr. Iqbal's assessment and the vocational expert's testimony regarding it. Particularly, the Court notes that while Dr. Iqbal ultimately opined that Plaintiff's memory was in tact, he noted that certain of Plaintiff's test scores were in the borderline range. For example, Plaintiff scored a 0.1 percentile rank in her Auditory Recognition Delayed Index Score and a 5th percentile rank in her Working Memory Index. Dr. Iqbal noted that these scores could be the result of Plaintiff's "depression and anxiety, affecting her concentration and attention span, and also affected by her

complaints of constant pain." (Tr. 136). However, the vocational expert could not discuss the impact of these scores on Plaintiff's ability to perform work, because she did not understand their significance. In the Court's view, this uncertainty in the vocational expert's testimony should have prompted the A.L.J. to seek further clarification from either Dr. Iqbal or an expert with an understanding of the impact of those scores. Having failed to fully develop the record in this regard, the Court is persuaded that a remand is required.[1]

In sum, the Court is not satisfied, at this juncture, with the A.L.J.'s explanation of her findings. Accordingly, the Court will deny Defendant's Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment to the extent that it requests a remand of this action to the A.L.J. for further findings and/or proceedings.

---

[1] While the Court does not base its decision for a remand on the A.L.J.'s determination of Plaintiff's credibility, the Court is also troubled by the A.L.J.'s remarks in the decision that "if the claimant genuinely had the level of pain asserted at the hearing, then she would not be able to even attend the hearing, not to mention concentrate on and respond to the questioning." (Tr. 17). This identical language was criticized by the Court in <u>Ayers v. Barnhart</u>, 2006 WL 2801949 (Sept. 29, 2006) (Robinson, J.), and courts have recognized that the claimant's ability to sit through a hearing is entitled to little or no weight. Without a proper evaluation of the conflicting medical evidence, the Court declines to comment further on the A.L.J.'s assessment of Plaintiff's pain and her credibility, except to say that the A.L.J. should avoid assessing whether Plaintiff's pain is credible solely by reference to her demeanor at the hearing.

16

## CONCLUSION

For the reasons discussed, the Court will deny Defendant's Cross-Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment to the extent that it requests a remand. The decision of the Commissioner dated March 16, 2005, will be reversed and this matter will be remanded to the A.L.J. for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.